United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAE ASSET FUNDING, L.P., | No. C 05-02490 WHA |
| Plaintiff, | |
| v. | **ORDER (1) GRANTING PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| APPLIED FINANCIAL, LLC and APPLIED FINANCIAL OF MICHIGAN, L.P., | |
| Defendants & Counterclaimants, | |
| v. | |
| BRAE ASSET FUNDING, L.P. and GREATER BAY EQUIPMENT FINANCE, | |
| Counterclaim Defendants. | |

**INTRODUCTION**

In this contract dispute, plaintiff and counterclaim defendant Brae Asset Funding, L.P., counterclaim defendant Greater Bay Equipment Finance and defendant Applied Financial, LLC all move for summary judgment. There is no reasonable dispute that Applied Financial, LLC breached a guaranty to which Brae Asset owned the rights. Plaintiff's motion on the contract claims is therefore **GRANTED**. Applied Financial's motion is **DENIED**. The motion of Brae Asset and Greater Bay for summary judgment on the counterclaims is **GRANTED**.

**STATEMENT**

This action is fall-out from a massive fraud perpetrated by individuals at Cyberco Holdings, Inc. In 2001, Cyberco entered into an agreement to lease computer hardware from one of defendants' corporate predecessors, Applied Financial, Inc. (Am. Compl. ("Compl."), Exh. A (Master Lease Agreement AFI0228 at p.1 & ¶ 1) & Exh. B (Lease Schedule No. 07B ¶ 1, Exh. A). In 2004, payments under the lease ceased when Cyberco went bankrupt and its fraud began to be revealed (Garecht Decl. ¶ 6).

In June of this year (2006), Cyberco president James Michael Horton was found guilty of four federal financial crimes in connection with the company's operation. The Cyberco scheme was to deceive financial institutions into lending the company money for computers and office equipment. Mr. Horton testified that he and his colleagues set up shell corporations, vendors and customers to create the appearance of a business that was doing better than, in fact, it was (Suppl. Req. for Judicial Notice, Tr. of Proceedings, *United States v. Horton*, No. 05CR0087 (W.D. Mich. plea colloquy June 22, 2006).*

One of these shell vendors, Teleservices Group, Inc., was the company from which Cyberco said it had bought the computer hardware that was the subject of the lease at issue here. Mr. Horton testified that he led banks to believe that, if they lent money to Cyberco and its affiliates, the banks would have a security interest in the goods that Teleservices supposedly would provide to Cyberco. He did so, however, knowing that Teleservices was a mirage that could not and would not sell anything to Cyberco (*id.* at 15–16).

According to the information against Mr. Horton, mail and telephone calls to the shell companies were re-directed to Cyberco employees, who lied to avoid detection. When lenders and auditors visited Cyberco's offices to verify the existence of leased computer equipment, they were fooled by "blinky boxes" — empty metal containers with flashing lights, wires leading nowhere and bogus serial numbers. Loan proceeds were pocketed by the conspirators for their personal use and were used to repay earlier lenders. All told, the operation

---

* To the extent that this order cites materials of which Brae Asset and Greater Bay have asked the Court to take judicial notice, their request for judicial notice is granted. The request is denied as moot as to all materials to which this order does not cite.

fraudulently obtained $90 million from forty to fifty lenders (Pl.'s Req. for Judicial Notice, Exh. 1 (FBI Special Agent Gilligan Aff. ¶¶ 85–91), Exh. 9 (Information, *Horton*)).

Before this con game was revealed, Applied Financial, Inc., the original lessor of computer hardware to Cyberco, changed its name to Applied Financial, LLC ("Applied Financial"). Applied Financial, a defendant here, then assigned its interest in the leased property and in the lease to a related company, Applied Financial of Michigan ("AFM") (Compl., Exh. D (Agreement and Assignment of Lease ¶¶ 1–2).

In February 2003, the lease and property were transferred once again, this time to Greater Bay Equipment Finance. When the property and lease were sold to Greater Bay, AFM warranted that it

> has good title to or a first lien and priority security interest [in the leased computer equipment] . . . it has the power and authority to, and does hereby, grant, assign, and convey . . . a valid first lien and priority security interest in the [equipment and] the Lease[,] . . . the Lease [is a] valid and binding agreement[] . . . [,] the Property has been delivered to and accepted by the Lessee [Cyberco] . . . and . . . the Lessee [Cyberco] has not previously been, or currently is, in default under the Lease.

Also to induce Greater Bay to purchase the lease, Applied Financial executed a guaranty in which it "unconditionally" vouched for the accuracy and completeness of each representation and warranty made by AFM in its security agreement with Greater Bay. The guaranty also provided that Greater Bay could sue Applied Financial directly, rather than first sue AFM or seek other remedies, in the event of a breach of the agreement by AFM. Along with the agreements, defendants provided Greater Bay with a certificate signed by Thomas Horton, the Cyberco executive who later pleaded guilty. The certificate stated that Cyberco had received all of the leased items on January 31, 2003 (Garecht Decl. ¶¶ 1, 3–5, Exh. A (Sec. Agreement ¶ 2); Exh. B (Guaranty ¶¶ 1–2); Exh. C (Acceptance Certificate ¶¶ 1, 3–4)).

According to Thomas W. Garecht, vice president of Greater Bay, his company entered into the security agreement and accepted the guaranty not knowing that there was any reason to suspect Cyberco of financial impropriety. In December 2004, a Chapter 7 bankruptcy case was filed against Cyberco, which immediately went into default on its lease payments to Greater Bay. There was $258,022.25 remaining due on the lease (Garecht Decl. ¶¶ 6, 11–12).

3

Concerned that the leased equipment was not on Cyberco's premises, Greater Bay examined an inspection report commissioned by defendants. The report stated that, with the help of Cyberco employees, the leased equipment had been found at Cyberco's office. The inspector noted, however, that "some [items] were internal components," suggesting that he may not have been able to verify their existence first-hand, and that other finance companies had laid claim to the same property.

At the same time, Greater Bay demanded payment in full on the remaining balance from Applied Financial. Applied Financial replied that there was no evidence that the computer equipment had *not* been purchased, delivered and installed at Cyberco. Greater Bay later obtained three additional inventories of property at Cyberco's offices, including one by the bankruptcy trustee, none of which contained any record of the property that purportedly had been leased to Cyberco. Finally, Greater Bay hired its own inspectors to examine Cyberco's assets. On March 23, 2005, they found none of Greater Bay's equipment (Garecht Decl.¶¶ 7–8, 10 13, Exh. D; Exh. E (Letter from James L. Christensen, counsel for Applied Financial, to James A. Tiemstra, counsel for Greater Bay (Jan. 7, 2005)); Exhs. F–H; Exh. I (Email from Keith Layton, Product Mngr., Great Lakes Computer, to Keith Layton (Apr. 4, 2005))).

After all this, Greater Bay sold its interest in the agreements and guaranty to Brae Asset in July 2005, after initiation of the instant action (Garecht Decl. ¶ 14, Exh. J (Bill of Sale and Assignment of Assets)). Brae Asset conducted its own investigation. It contacted the manufacturer of the equipment, Nortel Networks Ltd. An employee charged with maintaining that company's serial-number records stated that none of the purported serial numbers of the equipment supposedly sold by Teleservices Group, Inc., were in Nortel's databases. She furthermore stated that the numbers did not conform to any of the standard patterns for the company's serial numbers (McBeth Decl. ¶¶ 1, 3–4, Exh. A). Two other Nortel employees who maintain the company's contracts with end-users and with retailers both stated that they had no record of Nortel having done business with Teleservices Group (Sutherland Decl. ¶¶ 1, 4, Exh. A; Mlcoch Decl. ¶¶ 1, 4, Exh. A). Another Nortel employee reported that the repair databases had no record of the relevant serial numbers (Flahive Decl. ¶¶ 1, 4, Exh. A).

4

1    Brae Asset and Greater Bay argue that this evidence shows that Cyberco falsified
2 records of computer purchases from its shell corporation, Teleservices, in order to defraud
3 Applied Financial's corporate predecessor out of the original loan proceeds. Cyberco then
4 allegedly used proceeds from other lenders to pay back Applied Financial and subsequent
5 holders of the lease, until the pyramid collapsed. Brae Asset and Greater Bay therefore argue
6 that Applied Financial and AFM breached their agreements and guaranty, which effectively
7 vouched for the existence of the leased property.
8    The complaint asserts claims against both AFM and Applied Financial for breach of
9 contract, intentional misrepresentation, negligent misrepresentation, fraudulent non-disclosure
10 and rescission. Applied Financial and AFM counterclaimed, seeking a declaratory judgment
11 pursuant to Utah Code Section 78-33-2 that they are entitled to certain payments from Greater
12 Bay and Brae Asset under the contract. In the counterclaim, AFM also alleged that Greater Bay
13 and Brae Asset violated Utah Code Section 70A-9a-207, which requires that "a secured party
14 . . . use reasonable care in the custody and preservation of collateral in the secured party's
15 possession." AFM claims that, because it had residual payments due under the lease that were
16 secured by the Cyberco property as collateral, the counterclaim defendants had a duty to
17 preserve the collateral located at Cyberco's offices (Counterclaim ¶¶ 30–31).
18    Brae Asset and Greater Bay move for summary judgment. They frame the motion as
19 one to determine "whether the Defendants are liable . . . for breach of certain representations
20 and warranties . . . . If the Defendants are found liable, their counterclaim against the Moving
21 Parties necessarily fails because there is no subject matter to support the allegations contained
22 therein." The motion nowhere discusses Brae Asset's claims of misrepresentation, non-
23 disclosure or rescission (Br. 4–5). This order therefore treats the motion as one for summary
24 judgment on Brae Asset's contract claims only, and on the counterclaim against Brae Asset and
25 Greater Bay.
26    At the same time, Applied Financial moves for summary judgment on the complaint but
27 not on the counterclaim. AFM, despite having the same counsel as Applied Financial, did not
28

5

join in Applied Financial's motion. It also did not join in any opposition to the motion by Greater Bay and Brae Asset.

**ANALYSIS**

Under Rule 56, summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not the task of the district court to scour the record in search of a genuine issue of triable fact. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient evidence for a reasonable finder of fact to return a verdict for the nonmoving party. On summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

All of the agreements and the guaranty relevant to this motion have choice of law provisions providing that they are governed by Utah state law (*e.g.*, Compl., Exh. A (Master Lease Agreement AFI0228 ¶ 18(d))).

**1. MOTION FOR SUMMARY JUDGMENT AGAINST AFM.**

AFM filed no opposition against the motion filed by Brae Asset and Greater Bay. The motion is therefore granted as to the contract claim against AFM and as to the counterclaims AFM brings against Brae Asset and Greater Bay.

**2. MOTION FOR SUMMARY JUDGMENT AGAINST APPLIED FINANCIAL.**

The Court set June 22, 2006, as the deadline for filing of dispositive motions in this action. The Court also admonished the parties that they "must adhere" to the standard 35-day track for a civil motion if either or both of them waited until June 22 to file a dispositive motion. In addition, the order forbade the parties from stipulating around any deadline set by that order (Case Management Order ¶¶ 8, 11).

On June 22, 2006, Greater Bay and Brae Asset served and filed their motion and noticed it for hearing on July 27, 2006, in accordance with the 35-day schedule established under the

civil local rules and required by the Case Management Order.  Applied Financial also met the deadline.  The opposition briefs and supporting papers were required to be served and filed not less than twenty-one days before the hearing date.  Civil L.R. 7-3(a).  The oppositions therefore were due July 6.

On July 6, Greater Bay and Brae Asset served and filed their opposition brief on time.  On July 13 — a week late — Applied Financial filed and served what purported to be its opposition.  It was a three-paragraph document.  It stated, somewhat unintelligibly, that "[t]he issues and contentions raised in Defendant's Motion For Summary Judgment in effect counter that Plaintiff or it's [sic] assignor, [Greater Bay] is entitled to judgment in any regard, including summary adjudication."  It then went on to state that, "[t]herefore, Defendant incorporates herein as if set forth in full, their [sic] Motion for Summary Judgement, [and] the points authorities and evidence offered in support thereof.  Defendant will file it's [sic] objections to the Plaintiff's Request for Judicial Notice, and evidentiary declarations under separate cover" (Opp. ¶ 1).  No evidence was submitted with the purported opposition brief.  Applied Financial's objections to the evidence submitted by Greater Bay and Brae Asset were filed July 17, July 18, August 2 and August 3, eleven, twelve, twenty-seven and twenty-eight days late, respectively.  These filings violated Civil Local Rule 7-3(d), which bars the filing of any material after the reply unless it highlights a recent and relevant judicial opinion or is filed with permission of the Court.  All of Applied Financial's tardy filings violated both the local rules and the Court's Case Management Order.  Greater Bay and Brae Asset also filed the declaration of Susan M. Le Blanc late.  None of the parties requested enlargement of time.

Also in the "opposition," Applied Financial asked to have the motion hearing continued, for an unspecified length of time, "in order to complete discovery."  It stated that it was requesting continuance of the motion hearing "on the grounds that the Plaintiffs [sic] and Defendant's [sic] agreed to lift the motion cutoff in order to complete discovery" (Opp. ¶ 2).  No evidence of any such agreement was filed.  Such an agreement would, in any event, violate the Court's Case Management Order, which barred stipulations around discovery and motion cut-offs.

7

Because Applied Financial filed its opposition a week late, it did so on the same day that Brae Asset and Greater Bay were required to submit their reply briefs that would, in theory, respond to the opposition. Brae Asset and Greater Bay filed their reply brief on time — twenty-six minutes after the "opposition" was filed.

On the same day, counsel for Brae Asset and Greater Bay filed a declaration contesting the statements made by defendants' counsel. He denied ever stipulating to ignore the court-imposed cut-off date for filing dispositive motions. He did, however, concede that the parties had stipulated to extend the discovery cut-off from May 5 to June 5 and produced the agreement. That agreement, signed on April 4, had never been filed with the Court (Tiemstra Decl. ¶¶ 3, 4). By this agreement, counsel for both sides violated the Case Management Order.

Applied Financial attempted to head off any problems caused by its late filings by claiming that "Plaintiff is estopped from asserting objection, in light of the stipulation between the parties to extend the *motion* cutoff" (Opp. ¶ 3). This contention is rejected because any such stipulation was barred by court order and therefore void and because there is no evidence of any such stipulation. In fact, the only evidence is to the contrary — that no such agreement was made.

Applied Financial blatantly sandbagged Brae Asset and Greater Bay by filing its opposition on the same day as the reply was due, and then filing its objections *after* the reply was due. All of these filings violated the Case Management Order, the local rules and basic concepts of fairness. In addition, these delays hampered preparation for the hearing. For these reasons, Applied Financial's opposition — which wasn't much to begin with — and subsequent objections are stricken. One result of this is that neither Applied Financial nor AFM have opposed the grant of summary judgment on the counterclaims. The motion by Brae Asset and Greater Bay must therefore be granted as to the counterclaims.

**3.    MOTION FOR SUMMARY JUDGMENT BY APPLIED FINANCIAL.**

Applied Financial submitted no evidence in support of its motion until eight days after the deadline, in violation of Civil Local Rule 7-2(d). Again, Applied Financial was sandbagging its opponents, this time giving them just three business days (six calendar days) to

8

incorporate its evidence into their opposition. Brae Asset and Greater Bay were entitled to a full two weeks to prepare their opposition. The declaration is full of legal argument and conclusions by the hearsay declarant, James Christenen, an attorney for Applied Financial, in violation of Civil Local Rule 7-5(b), which requires a declaration to contain "only facts" and to "avoid conclusions and argument." The declaration refers throughout to exhibits that were never filed. In addition, Mr. Christensen did not sign or date the declaration. Brae Asset and Greater Bay timely objected to it. Another declaration filed by Applied Financial, made by its attorney, Laurel Adams, also was filed even later, on August 2, 2006, and was not signed or dated. Both declarations therefore are stricken pursuant to Rule 7-5(b).

### A.   Breach of Contract.

Applied Financial argues that summary judgment on the contract claim against it is not warranted because there is evidence that the leased equipment really did exist and really was delivered to and accepted by Cyberco. If the equipment was delivered and accepted, Applied Financial argues that there is insufficient evidence that it breached the guaranty. The evidence to which Applied Financial refers is the certificate, signed by the convicted Cyberco executive, Thomas Horton, stating that the company had received all of the leased items on January 31, 2003 (Garecht Decl. ¶ 5, Exh. C (Acceptance Certificate ¶¶ 1, 3–4)).

Applied Financial's argument withers upon reading the testimony by Mr. Horton. He testified that Teleservices was a shell company that never sold equipment to Cyberco, and that Cyberco used such bogus property as collateral for loans (Suppl. Req. for Judicial Notice, Tr. of Proceedings, *United States v. Horton*, No. 05CR0087 (W.D. Mich. plea colloquy June 22, 2006). In light of that testimony, no reasonable finder of fact could put credence in his previous acceptance certificate, which was issued while the fraud was ongoing. That certificate was executed in just the type of circumstances that Mr. Horton later admitted were fraudulent: He created fictitious property, supposedly delivered by the shell company, Teleservices, to secure loans. In addition to Mr. Horton's testimony, other evidence makes it unreasonable to conclude that Cyberco ever received the goods. Nortel employees declared that the serial numbers were faked and that Nortel never did business with Teleservices. Cyberco was a Ponzi scheme (*see*

9

1  generally First Req. for Judicial Notice, Exh. 1 (Gilligan Aff.)).  Repeated inventories and
2  plaintiff's own inspection failed to turn up the relevant equipment.  Fake computer equipment
3  was a fixture at Cyberco (*id.* at ¶¶ 85–91).

4  In light of all this evidence and drawing all reasonable inferences in Applied Financial's
5  favor, there still can be no reasonable dispute that the leased property was fictional.  Because
6  the property never existed, Applied Financial breached its guaranty.  That guaranty
7  "unconditionally" vouched for the accuracy and completeness of each representation and
8  warranties made by AFM in its security agreement with Greater Bay.  AFM's warranties and
9  representations included that (1) it had good title to, or a first lien and priority security interest
10 in the computer equipment, (2) that it had the power to convey that lien and security interest, (3)
11 that the lease with Cyberco was valid, (4) *that the equipment had been delivered to Cyberco* and
12 (5) that the corporation had not been in default under the lease (Garecht Decl. ¶ 3, Exh. A (Sec.
13 Agreement ¶ 2)).  If there was no equipment, then none of these warranties was accurate, the
14 guaranty was not accurate and Applied Financial was in breach.  Brae Asset is therefore entitled
15 to summary judgment on the breach-of-contract claim.

16 **B.     Rescission.**

17 Brae Asset cannot both recover damages under the contract and win an order rescinding
18 the contract.  Summary judgment is entered in favor of Brae Asset on the contract claim.  It
19 therefore must abandon its rescission claim.

20 **C.     Fraudulent Non-disclosure.**

21 Applied Financial also never makes any arguments in its favor on the fraudulent non-
22 disclosure claim.  It merely makes the conclusory statement, in a subsection title, that
23 *"PLAINTIFF CAN NOT [SIC] SUSTAIN A CAUSE OF ACTION FOR . . . A TORTIOUS*
24 *FAILURE TO DISCLOSE"* (Br. 9), but never returns to the issue.  Defendant's motion is
25 therefore denied as to that claim as well.

26 **D.     Intentional Misrepresentation.**

27 Applied Financial and Brae Asset agree that the intentional misrepresentation claim
28 sounds in fraud (Def.'s Br. 7; Pl.'s Opp. 8).  A party commits common-law fraud under Utah

10

1 law when it makes a representation concerning a presently existing material fact which was
2 false and which it either knew to be false or made recklessly, knowing that there was
3 insufficient knowledge upon which to base such a representation. Furthermore, the liable party
4 must have made the representation for the purpose of inducing the other party to act upon it.
5 Finally, the victimized party, acting reasonably and in ignorance of the misrepresentation's
6 falsity, must have relied upon it and thereby been induced to act to its injury and damage. *Gold*
7 *Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996).

8 Applied Financial also asks for summary judgment on Brae Asset's claim for intentional
9 misrepresentation on the ground that there is no evidence that it made a false representation or
10 that it knew its representations were false. As stated in the section discussing the contract
11 claims, there is ample evidence that Applied Financial made a false representation in the
12 guaranty. There is also evidence that Applied Financial knew its representations were false.
13 That evidence is an email message from Mr. Horton to Wayne Jensen, an employee at Applied
14 Financial, apparently explaining why a Cyberco check made payable to Applied Financial had
15 bounced (Tiemstra Decl. in Opp. ¶ 7, Exh. D (Email from Jim Horton, president and chief
16 operating officer, CyberNET Engineering, to Wayne Jensen, Applied Financial (Jan. 30,
17 2002))). A bounced check may indicate that Cyberco failed to make a payment on the lease and
18 was therefore in default. Applied Financial guaranteed that Cyberco "has not previously been
19 . . . in default under the Lease" (Garecht Decl. ¶ 4, Exh. A (Sec. Agreement ¶ 2); Exh. B
20 (Guaranty ¶ 1)). There is therefore evidence that Applied Financial knew that Cyberco had
21 been in default and yet nevertheless guaranteed that Cyberco had *never* been in default.
22 Applied Financial's motion on the intentional misrepresentation claim therefore must be denied.

23

24 **E.     Negligent Misrepresentation.**

25 Applied Financial also argues that there is insufficient evidence to support a verdict that
26 it is liable for negligent misrepresentation. To prove negligent misrepresentation, a plaintiff
27 must prove that it was injured in a transaction by reasonable reliance upon a second party's
28 careless or negligent misrepresentation of a material fact, so long as the second party had a

11

pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact. *Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986).

Applied Financial argues that there is no evidence it was in a superior position to know the material facts, namely that Cyberco had never been in default and that the equipment existed. There is ample evidence to support a reasonable jury verdict in favor of Brae Asset on that issue. Applied Financial had been dealing with Cyberco at least since the original lease was signed. It had notice of a bounced check. It was the original lessor, so had more opportunity than Brae Asset and Greater Bay to know whether or not the computer hardware truly existed. Applied Financial's motion on the negligent misrepresentation claim is therefore denied.

## CONCLUSION

The motion for summary judgment on the contract claims by Brae Asset is **GRANTED**. The motion by Brae Asset and Greater Bay on the counterclaims is **GRANTED**. The motion by Applied Financial is **DENIED**. This resolves the contract claims and the counterclaims. It leaves for trial, however, Brae Asset's claims for intentional misrepresentation, fraudulent non-disclosure and negligent misrepresentation.

**IT IS SO ORDERED.**

Dated: August 14, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12